MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

NATALIE LEE (CABN 277362)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Natalie.Lee2@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. CR-13-00447 EMC |
| v. | ) STIPULATIONS REGARDING BENCH TRIAL |
| ANGELO CIBRIAN, | ) |
| Defendant. | ) |

The parties hereby submit the following stipulations for trial by the Court, pursuant to Federal Rule of Criminal Procedure 23.

## I.    INTRODUCTION

This trial concerns the alleged unlawful possession of a Taurus, Model 85, .38 caliber revolver, with serial number VJ48905, and 51 live rounds of .38 caliber ammunition. On July 9, 2013, the Grand Jury returned an Indictment charging Defendant with a single count of being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1). Defendant filed a Motion to Suppress on September 11, 2013. The United States filed an Opposition on September 18, 2013, and Defendant filed a Reply on September 25, 2013. The Motion sought the suppression of the firearm and ammunition on Fourth Amendment grounds, arguing specifically that the firearm and ammunition were the fruits of an unlawful search and seizure by the San Francisco Police Department.

1   A motion hearing was held on October 10, 2013, and an evidentiary hearing was held on December 20,
2   2013, and January 7, 2014. On January 7, 2014, the Court issued an oral Order, denying Defendant's
3   Motion to Suppress.

4       On January 7, 2014, this matter was set for a stipulated testimony bench trial to be held on
5   February 5, 2014. The parties agree to the bench trial with stipulations as detailed below. The parties
6   enter these stipulations with the express understanding that Defendant objects to the introduction of any
7   evidence obtained as a result of the aforementioned search and the fruits of that search, on the basis that
8   they were seized in violation of the Fourth Amendment. The government and Defendant agree that by
9   entering into these stipulations, Defendant is not in any way rendering moot his right to appeal the denial
10  of his motion to suppress. *United States v. Larson*, 302 F.3d 1016, 1020 (9th Cir. 2002) (stating that an
11  appeal after a stipulated testimony bench trial, as here, is not moot, since the stipulations merely
12  describe the evidence the government would seek to introduce at trial). Defendant does not waive his
    objection to the introduction of that evidence by entering into the following stipulations.

13  **II.    STIPULATIONS FOR TRIAL**

14  1.  Defendant, Angelo Cibrian, waives his right to a jury trial, and the government consents to have
15  the Court conduct the trial in this case.

16  2.  But for these stipulations, the government would have called at least the following people to
17  testify at trial: San Francisco Police Department (SFPD) Officers David Correa, Kevin Rightmire, Brent
18  Cader, and SFPD Sergeant Hugh Hall, III, as well as Bureau of Alcohol, Tobacco, Firearms and
19  Explosives (ATF) Special Agent Joseph Belisle, and Cellmark Forensics DNA Analyst Robert Boyle.

20  3.  For purposes of this bench trial, the parties agree that the Court can rely on the testimony and
21  evidence introduced at the evidentiary hearing, in addition to stipulations below, in order to make a
22  determination of guilt in this case. This evidence includes but is not limited to the following:

23      (a)     If called to testify, SFPD Officer David Correa would testify regarding the events on
24  February 27, 2013, including, but not limited to the following:

25      On February 27, 2013, at approximately 1:51 p.m., Officer Correa was inside his marked patrol
26  vehicle in full uniform with his partner, SFPD Officer Stephen Hildebrand. Officer Correa received
27  information from 911 dispatch that a caller had stated that a male individual by the name of "Angelo
28  Cibrian" had threatened his girlfriend with a gun that morning inside a residence located a 61 Cameron

STIPULATIONS RE. BENCH TRIAL
13-CR-447 EMC                        2

1  Way. Further, information from dispatch stated that Cibrian was "10-30," which means that Cibrian was
2  wanted on an active no bail arrest warrant. Dispatch also stated, amongst other things, that Cibrian had
3  a tattoo of "Ebony" on the back of his neck.

4         As Officer Correa was receiving the information described above from 911 dispatch, Officer
5  Hildebrand and he began to drive to 61 Cameron Way. They arrived on scene as other units were en
6  route or arriving on scene. Officer Correa positioned himself in front of 61 Cameron Way while Officer
7  Hildebrand (and possibly an additional officer) were positioned in the back of 61 Cameron Way.

8         Moments later, Officer Correa knocked on the front door, and an individual who matched parts
9  of the description he had been provided of "Angelo Cibrian" answered. Officer Correa asked the
   individual to step out of the residence and turn around. The individual complied, and it was at that point
10 Officer Correa noticed the tattoo of "Ebony" on the back of his neck. That was when Officer Correa
11 determined that the individual standing in front of him was the suspect "Angelo Cibrian" who was
12 wanted on an active no bail arrest warrant. Officer Correa detained the defendant by placing him into
13 handcuffs.

14        After taking custody and control of the defendant, Officer Correa and the other officers who
15 were on scene entered the residence, 61 Cameron Way, and began to conduct a protective sweep for
16 bodies to ensure the safety and welfare of any unknown or potential occupants, including the reported
17 victim, as well as the safety of officers.

18        While Officer Correa was conducting a protective sweep of 61 Cameron Way, Officer Correa
19 noticed male clothing inside an upstairs bedroom in plain view and several boxes containing what
20 appeared to be thousands of dollars' worth of sports trading cards.

21        After conducting the protective sweep of the residence, Officer Correa and other SFPD Officers
22 on scene waited until they were given permission to conduct a more extensive search. Officer Correa
23 did not participate in that more extensive search.

24        (b)    If called to testify, SFPD Officer Kevin Rightmire would testify regarding the events on
25 February 27, 2013, including, but not limited to the following:

26        On or about February 27, 2013, at approximately 1:51 p.m., Officer Rightmire was inside of his
27 marked patrol vehicle in full uniform with his partner, SFPD Officer Brent Cader. They received
28 information from 911 dispatch that a caller had stated that a male individual by the name of "Angelo

STIPULATIONS RE. BENCH TRIAL
13-CR-447 EMC                                    3

1 Cibrian" had threatened his girlfriend (the caller's daughter) with a gun that morning inside a residence
2 located at 61 Cameron Way. Further, information from dispatch stated that Cibrian was on parole and
3 "10-30," which means that the California Department of Corrections and Rehabilitation, San Francisco
4 Parole Division, issued a no bail arrest warrant for Cibrian for being a parolee at large. Dispatch also
5 relayed a physical description of Cibrian, and that, per the 911 caller, Cibrian had stated that he was "at
6 home" (meaning at 61 Cameron Way).

7 As Officer Rightmire was receiving the information described above from 911 dispatch, he and
8 Officer Cader began to drive to 61 Cameron Way. As they were driving there, Officer Cader ran
9 Cibrian in the California Department of Motor Vehicles (DMV) computer database to determine
10 additional information about him such as his listed address. They learned from the CA DMV database
11 that Cibrian had eight days before – on February 19, 2013 – changed his mailing address to 61 Cameron
Way, San Francisco, CA 94124.

12 When Officer Rightmire arrived at 61 Cameron Way at approximately 2:00 p.m., other officers
13 had already detained Cibrian outside of the residence and had either completed or were in the process of
14 completing a protective welfare sweep. After they arrived at the residence, Officer Righmire ran
15 Cibrian over dispatch to again confirm his warrant and his residence. Dispatch provided the same
16 information that Cibrian had changed his mailing address with DMV on February 19, 2013.

17 Because Cibrian was on parole, Officer Rightmire participated in a more extensive parole search
18 of the residence, after receiving the authorization from supervisor Sergeant Hugh Hall.

19 (c) If called to testify, SFPD Officer Brent Cader would testify regarding the events on
20 February 27, 2013, including but not limited to the following:

21 On or about February 27, 2013, at approximately 1:51 p.m., Officer Cader was inside of his
22 marked patrol vehicle in full uniform with his partner, SFPD Officer Kevin Rightmire. They received
23 information from 911 dispatch relaying that a caller had stated that a male individual by the name of
24 "Angelo Cibrian" had threatened his girlfriend (the caller's daughter) with a gun that morning inside a
25 residence located at 61 Cameron Way. Further, information from dispatch stated that Cibrian was on
26 parole and "10-30," which means that a no bail arrest warrant had been issued for Cibrian for being a
27 parolee at large. Dispatch also relayed a physical description of Cibrian, and that, per the 911 caller,
28 Cibrian had stated that he was "at home" (meaning at 61 Cameron Way).

STIPULATIONS RE. BENCH TRIAL
13-CR-447 EMC                                    4

1    As Officer Cader was receiving the information described above from 911 dispatch, he and
2    Officer Rightmire began to drive to 61 Cameron Way. As they were driving there, Officer Cader ran
3    Cibrian in the California Department of Motor Vehicles (DMV) computer database to determine
4    additional information about him such as his listed address. He learned from the CA DMV database that
5    Cibrian had eight days before – on February 19, 2013 – changed his mailing address to 61 Cameron
6    Way, San Francisco, CA 94124.

7    When Officer Cader arrived at 61 Cameron Way at approximately 2:00 p.m., other officers had
8    already detained Cibrian outside of the residence and either completed or were in the process of
9    completing a protective welfare sweep.

10   Because Cibrian was on parole, Officer Cader participated in a more extensive parole search of
11   the residence, after receiving the authorization from supervisor Sergeant Hugh Hall. During the parole
12   search of the residence, Officer Cader found a loaded firearm and ammunition inside of a locked storage
     cubby, the keys to which another officer obtained from Cibrian's pocket.

13   (d)    If called to testify, SFPD Sergeant Hugh Hall would testify regarding the events on
14   February 27, 2013, including but not limited to the following:

15   On or about February 27, 2013, Sergeant Hall was inside of his marked patrol vehicle when he
16   received information from 911 dispatch relaying that a caller had stated that a male individual by the
17   name of "Angelo Cibrian" had threatened his girlfriend (the caller's daughter) with a gun that morning
18   inside a residence located at 61 Cameron Way. Further, information from dispatch stated that Cibrian
19   was on parole and "10-30," which means that a no bail arrest warrant had been issued for Cibrian for
20   being a parolee at large. Dispatch also relayed a physical description of Cibrian, and that, per the 911
21   caller, Cibrian had stated that he was "at home" (meaning at 61 Cameron Way).

22   As Sergeant Hall was receiving the information described above from 911 dispatch, he began to
23   drive to 61 Cameron Way.

24   When Sergeant Hall arrived at 61 Cameron Way, other officers had already detained Cibrian
25   outside of the residence and either completed or were in the process of completing a protective welfare
26   sweep.

27   Sergeant Hall ran Cibrian to confirm his outstanding arrest warrant and to determine his address,
28   which the CA DMV listed as including "61 Cameron Way."

STIPULATIONS RE. BENCH TRIAL
13-CR-447 EMC                                5

1    Because Cibrian was on parole, Sergeant Hall authorized the SFPD officers on scene, for whom
2 he was the supervising sergeant, to conduct a more extensive parole search of the residence. During the
3 parole search of the residence, Officer Cader found a loaded firearm and ammunition inside of a locked
4 storage cubby, the keys to which another officer obtained from Cibrian's pocket.

5    (e)    If called to testify, Special Agent Belisle would testify regarding the subject firearm and
6 ammunition, including, but not limited to the following:

7    Prior to February 27, 2013, the Taurus, Model 85, .38 caliber revolver, with serial number
8 VJ48905, and 51 live rounds of .38 caliber ammunition had been transported between California and
9 another state. The firearm and ammunition, therefore, traveled in and affected interstate commerce.

10    (f)    If called to testify, Cellmark Forensics, DNA Analyst Robert Boyle would testify
11 regarding DNA analysis performed relating to the firearm and ammunition, including, but not limited to
12 the following: in his opinion: (1) the DNA recovered from the gun grip swabs is a mixture of more than
13 one person; (2) in the absence of an identical twin, the major profile is identified as originating from the
   defendant; (3) the chance that a person unrelated to the defendant could have been similarly included is
14 approximately one person in 22.00 quadrillion as to Southwest Hispanics, one person in 41.27
15 quadrillion Southeast Hispanics, one person in 133.4 quadrillion Caucasians; and (4) due to the low
16 level of DNA recovered from the cartridge swabs, no conclusions could be made, and DNA is not
17 commonly recovered from ammunition because of its characteristics.

18    (g)    Prior to February 27, 2013, Defendant had previously been convicted of a crime
19 punishable by a term of imprisonment exceeding one year.

20    4. Any and all exhibits introduced by the parties at the evidentiary hearing held on December 20,
21 2013, and January 7, 2014, are deemed admitted into evidence for the purposes of this trial.

22    5. The firearm and ammunition identified above are also deemed admitted into evidence for the
23 purposes of this trial, subject to Defendant's above objections.

24 //

25 //

26 //

27 //

28 //

1      6.  Defendant waives his right to testify and to call any witnesses on his own behalf, and he submits

2  the matter for decision by the Court on the basis of the above stipulations.

3

4  SO STIPULATED.

5                            MELINDA HAAG
                          United States Attorney

6

7  DATED: 2.5.14

8                            NATALIE LEE
                          Assistant United States Attorney

9

10  DATED:

11                            ANGELO CIBRIAN
                          Defendant

12

13  DATED:

14                            BRANDON LEBLANC
                          Attorney for the Defendant