MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

NATALIE LEE (CABN 277362)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Natalie.Lee2@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. CR 13-0447 EMC |
| v. | GOVERNMENT'S SENTENCING MEMO |
| ANGELO CIBRIAN, | Date: June 17, 2014 |
| Defendant. | Time: 2:30 p.m. |

The United States of America requests that Defendant Angelo Cibrian be sentenced to 96 months imprisonment, to be followed by three years of supervised release, and ordered to pay a $100 special assessment.

**INTRODUCTION**

Defendant was found guilty of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), after a stipulated testimony bench trial. The United States agrees with the Guidelines calculations set forth in the Presentence Investigation Report ("PSR") and respectfully requests that Defendant be sentenced to a term of imprisonment of 96 months. Defendant, a 30 year old four-time convicted felon with a lengthy criminal history that involves drugs, firearms,

robberies, and crimes of violence, illegally possessed a firearm and ammunition on February 27, 2013, in San Francisco, California, when he was wanted on an active no-bail arrest warrant for being a parolee at large. Worse yet, Defendant was arrested after a 911 call reported that he had assaulted his girlfriend (with whom he has a two year old child) with a gun inside their residence that very same morning. Defendant has not accepted responsibility in this case, but, instead, has aggressively fought every step of the way, starting with a detention hearing and continuing forward with a motion to suppress and then a stipulated testimony bench trial. For the reasons discussed more fully below, Defendant should be sentenced to 96 months imprisonment.

**ARGUMENT**

**I.    DEFENDANT'S APPLICABLE GUIDELINES RANGE IS CORRECTLY CALCULATED IN THE PSR.**

The United States agrees with the Guidelines calculations set forth in the PSR for Count One in the indictment resulting in a total offense level of 24 and a criminal history category of V, which results in a Guidelines range of 92-115 months. PSR ¶¶ 26, 42.

**A. The United States Has Not Moved for a Third Point Reduction for Acceptance of Responsibility.**

The third point under U.S.S.G. § 3E1.1 is appropriate where "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources effectively." Defendant's conduct during the pendency of this case has been the very opposite of that described in § 3E1.1.

Defendant first pursued release pending trial at a detention hearing, even though he was already wanted on an outstanding active no-bail arrest warrant for being a parolee-at-large. Next, Defendant pursued a meritless motion to suppress that was predicated on the false premise that he did not reside at XX Cameron Way, in San Francisco, California. (As evidenced by his own sister's statements in the PSR regarding his residency, Defendant was clearly residing with his girlfriend and their two year old son at XX Cameron Way.) The Court denied Defendant's motion to suppress on the papers; however, Defendant filed – and was granted – reconsideration.

A two day evidentiary hearing was then held.  In opposition to Defendant's motion, the United States was forced to obtain declarations from three different San Francisco Police Department (SFPD) officers and to call four SFPD officers at the hearing.  The United States also had to brief why the SFPD officers' unsustained complaints from the Office of Citizens Complaints (OCC) were inadmissible for impeachment purposes.  After briefing (and re-briefing) this issue, Defendant then withdrew his request to use the police officers' unsustained complaints against them.  The evidence put forth by the government during the two day, nearly 10 hour, evidentiary hearing represented a substantial portion of the evidence that would have been used to prove this case at trial.  The lengthy hearing was in fact a mini-trial involving extensive government time and allocation of resources.

Following his evidentiary hearing, Defendant noticed his intent to participate in a stipulated testimony trial, which was held on February 5, 2014.  Defendant was indicted on this case on July 9, 2013.  Six hotly contested months elapsed from beginning to end before Defendant was found guilty by this Court.

For all these reasons, the government does not seek a three-level reduction under § 3E1.1.  As this Court is well aware, merely the allocation and expenditure of prosecutorial resources for the purposes of defending an appeal is a rational basis for the government to decline to move for a third reduction point.  *See United States v. Johnson*, 581 F.3d 994, 1001-1002 (9th Cir. 2009).  The government has put forth far more effort, time, and energy into this case, as described above.

**A. Defendant Has Not Accepted Responsibility in This Case, And The United States Agrees with the Probation Officer That A Two-Point Adjustment for Acceptance of Responsibility Is Not Merited.**

U.S.S.G. § 3E1.1 states that "if the defendant *clearly* demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." (emphasis added)  Conspicuously absent from the record on this case is any significant evidence that Defendant accepted responsibility for his crime.  "Although a district court may not punish a defendant for failing to participate in fact-gathering at a presentence interview or for not pleading guilty, the defendant must carry the burden of demonstrating the acceptance of responsibility."  *United States v. Innie*, 7 F.3d 840, 848 (9th Cir. 1993).  Defendant has not carried his burden.

To receive the two-point downward adjustment, a defendant must at least show contrition or remorse. *See United States v. Gallant*, 136 F.3d 1246, 1248 (9th Cir. 1998) (holding that district court properly denied § 3E1.1 adjustment where defendant merely regretted getting caught). The application notes to § 3E1.1 also list a series of criteria probative of whether a defendant is entitled to this adjustment:

    (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable…

    (b) voluntary termination or withdrawal from criminal conduct or associations;

    (c) voluntary payment of restitution prior to adjudication of guilt;

    (d) voluntary surrender to authorities promptly after commission of the offense;

    (e) voluntary assistance to authorities in recovering of the fruits and instrumentalities of the offense;

    (f) voluntary resignation from the office or position held during the commission of the offense;

    (g) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

    (h) the timeliness of the defendant's conduct in manifesting acceptance of responsibility.

U.S.S.G. § 3E1.1, comment n. 1(a)-(h); *see also United States v. Nielsen*, 371 F.3d 574 (9th Cir. 2004). Defendant's actions do not display any of these characteristics.

The comments to § 3E1.1 also explain that a defendant may very well go to trial in order to preserve a constitutional challenge to a statute, for example, and still deserve points for acceptance. The comments, however, stress that "in each such instance… a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." Here, Defendant has made no such statement accepting responsibility for being a felon in possession of a firearm, period. Noticeably lacking in the PSR is a brief one or two sentence admission by Defendant of *illegally possessing a firearm while being a felon*. Such an admission would easily merit Defendant two points for acceptance. The argument, for instance, that Defendant cannot make such an admission in order to "preserve his right to appeal the suppression issue in front of the Ninth Circuit" is entirely without merit, as the Fourth Amendment is an entirely different area of the law as guilt or innocence of

crime. Example: a defendant may very well be guilty of being in a felon in possession of a firearm yet still a firearm may very well be suppressed due to law enforcement error under the Fourth Amendment. As defense counsel, the probation officer, the government, and the Court are well-aware, suppression issues under the Fourth Amendment are separate and distinct from whether a defendant's conduct has met the elements of the offense, and surely the Ninth Circuit knows this.

Unless and until Defendant makes a brief statement demonstrating acceptance of responsibility for being a felon in possession of a firearm, which is wholly irrelevant to and has no bearing on any Fourth Amendment suppression issue that he would like bring to the Ninth Circuit, Defendant has not accepted responsibility under § 3E1.1.

### B. PURSUANT TO THE SENTENCING GUIDELINES AND APPLICATION OF THE FACTORS IN 18 U.S.C. § 3553(a), A SENTENCE OF 96 MONTHS IMPRISONMENT IS REASONABLE.

On February 27, 2013, at around 1:51 p.m., a woman called 911 dispatch to report that a man by the name of Angelo Cibrian had just that very morning threatened her daughter with gun. PSR ¶ 6. The caller, who turned out to be the victim's mother, reported that the domestic violence incident had occurred inside of her daughter's home at XX Cameron Way, San Francisco. *Id*. According to the caller, Cibrian was on parole. *Id*.

Police dispatch immediately relayed to police officers the above described information. *Id*. at ¶ 6-7. Police dispatch also relayed to officers that Angelo Cibrian was a parolee who was "10-30" – that is, he was wanted on an active no-bail arrest warrant for being a parolee at large. *Id*. at ¶ 6. Police dispatch further relayed certain descriptors of Cibrian's physical appearance, including, most notably, a tattoo of "Ebony" on the back of his neck. *Id*.

SFPD officers arrived on scene momentarily, knocked on the front door, and a male individual who matched the description that dispatch had provided of the suspect answered the door. *Id*. at ¶ 7. One of the officers asked the male individual to turn around and immediately noticed a tattoo on the back of his neck inscribed "Ebony." *Id*. At that point, the officers determined that the man standing in front of them was indeed the suspect – Angelo Cibrian – who was a parolee at large wanted on an active no-bail arrest warrant. *Id*. Defendant was arrested on the spot. *Id*. On his person, Defendant had three sealed plastic bags containing a total of approximately 3.2 grams of methamphetamine. *Id*.

1   After taking custody and control of Defendant, the officers entered XX Cameron Way in order to
2   conduct a quick and limited protective welfare search for people and/or victims. *Id*. at ¶ 8. The limited
3   search was to ensure that the reported female victim was not inside of the residence in danger or in need
4   of any medical aid, as the 911 call had reported that Defendant had threatened her inside of the residence
5   with a gun. *Id*. The limited search was also to ensure that there were no other people inside of the
6   house, including the two year old little boy. *Id*.

7   During the welfare sweep, the officers noticed numerous items and articles of male clothing
8   inside of an upstairs bedroom in plain view. *Id*. at ¶ 9. Further, the officers noticed several boxes
9   containing what appeared to be thousands of dollars' worth of sports trading cards, which appeared to
10  them as suspicious. *Id*. After conducting the limited search of the residence for people or victims, the
11  officers waited until they were given official permission to conduct a more extensive parole search of
12  the residence per Defendant's parole search condition. *Id*. at ¶ 10.

13  Following the protective sweep, other SFPD officers arrived on scene. *Id*. Two of these officers
14  had already run Defendant in the California Department of Motor Vehicles (DMV) database and
15  determined that he had just recently – eight days prior in fact – changed his mailing address with CA
16  DMV to "XX Cameron Way, San Francisco, CA 94124." *Id*. Therefore, when these officers arrived,
17  they then conducted a parole search of the residence. *Id*. They found a loaded firearm and ammunition
18  inside a storage cabinet (the keys to which they obtained from Defendant's very own pocket). *Id*. In
19  addition to the loaded firearm, the officers found a homemade silencer and four CA driver's licenses that
20  did not belong to Defendant (two of which were reported stolen). *Id*. As described above, Defendant
21  had a cornucopia of crimes on his person and inside his residence – drugs, a gun, ammunition, and
22  stolen identity documents.

23  A review of Defendant's criminal record showed that he sustained four adult felony convictions
24  for selling drugs and evading a peace officer while willfully disregarding safety, which is a crime of
25  violence. *Id*. at ¶¶ 35-39. Defendant also sustained five juvenile convictions, one of which involved an
26  assault on a police officer. *Id*. at ¶¶ 28-34. Defendant has been arrested a total of 13 times. *Id*. at ¶¶ 28-
27  46. Defendant's criminal record spans eighteen years, from the age of 12 years old until the present day
28  when he is 30 years old. *Id*. In fact, Defendant has been arrested – and convicted – nearly every couple

years – at the ages of 12, again at 12, 15, again at 15, 16, 18, 22, 23, 24, 25, and now 30. *Id*. The Court will note that for his felony conviction dated May 5, 2006, both Defendant's probation and parole were revoked. *Id*. at ¶ 36. The Court will note that for his latest felony conviction dated September 10, 2009, Defendant's parole was revoked at least twice; he was paroled on *February 22, 2013* but he was arrested for this offense on *February 27, 2013*. *Id*. at ¶ 39. What this means is that Defendant lasted ***a mere five days*** before he got into trouble with the law again, before he was caught with a loaded firearm and ammunition.

Bottom line and no way around it – Defendant cannot and will not be deterred from repeatedly committing crimes and reoffending. Bottom line and no way around it – Defendant cannot and will not be successfully supervised by the Court or the Probation Office when he ultimately is released from custody on this case. Based on his *established* criminal record and his proven and reliable pattern of committing crimes every year or two – crimes which have escalated in nature – the *only* effective way to protect the community from Defendant and to deter him is to sentence him to custodial term that sends the right message. A term of 96 months accomplishes this goal and is no greater than necessary to achieve the ends of justice in this case. Should the Court find that Defendant merits any points for acceptance, 96 months is still within the guidelines range. Should the Court find that Defendant merits no points for acceptance, 96 months is still within the guidelines range.

The Supreme Court recently noted that the "Guidelines . . . seek to embody the § 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 127 S. Ct. 2456, 2464 (2007). These factors or considerations include the need for the sentence to promote respect for the law, afford adequate deterrence, protect the public from further criminal conduct by the defendant, and provide the defendant with needed training and medical care. 18 U.S.C. § 3553(a). The 96 months sentence recommended by the United States all of these sentencing goals, especially promoting respect for the laws, affording adequate deterrence, and *protecting the public from further crimes of Defendant*.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court determine that Defendant's Guidelines offense level is 24 and his criminal history category is V. The United States further respectfully requests that, taking into consideration the sentencing factors set forth in section

1  3553(a), the Court sentence Defendant to 96 months imprisonment, impose a three-year term of

2  supervised release (under the terms and conditions recommended by the USPO including the special

3  search condition), and order Defendant to pay a $100 special assessment.

4

5  DATED: June 12, 2014                           Respectfully submitted,

6                                                 MELINDA HAAG
                                                  United States Attorney
7
                                                       /S/
8                                                 ───────────────────────
                                                  Natalie Lee
9                                                 Assistant United States Attorney

GOVNT'S SENTENCING MEMO
CR 13-0447 EMC                                    8